**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

DARIN LEGORE

           Plaintiff

    v.

ONEWEST BANK, FSB

           Defendant

:

:

:                  Civil Case No. L-11-0589

:

:

:

o0o

**MEMORANDUM**

       Plaintiff Darin Legore brings this action against Defendant OneWest Bank, FSB

("OneWest") for claims stemming from the denial of his application for a permanent home loan

modification.  Now pending are OneWest's Motion to Dismiss, Docket No. 14, and OneWest's

Supplemental Motion to Dismiss, Docket No. 23.[1]  For the reasons stated herein, the Court will

GRANT OneWest's motions.

I.      **BACKGROUND**

       Faced with a rising number of home foreclosures across the United States, the U.S.

Department of the Treasury introduced the Home Affordable Modification Program ("HAMP")

in February 2009.  HAMP aims to stem the tide of foreclosures by providing funding incentives

to loan servicers who agree to reduce borrowers' monthly payments in compliance with the

program guidelines.  Government-sponsored entities, such as Fannie Mae and Freddie Mac, are

required to comply with the HAMP guidelines, but participation is voluntary for all other loan

servicers.  Those servicers who choose to participate enter into an agreement with the federal

---

[1]      Also pending is Legore's Motion for Leave to File Supplemental Authority in Support of his
Response to Defendants Motion to Dismiss, Docket No. 27, which the Court will grant.

government that expressly incorporates the HAMP guidelines.  Compliance oversight is

delegated to Freddie Mac.

Under the HAMP guidelines, a borrower's eligibility for a permanent loan modification

is determined in two stages.  First, the servicer ascertains whether the borrower meets the

minimum eligibility requirements for a modification and whether the potential modification

would result in a positive net present value ("NPV").  At this stage, the loan servicer is permitted

to rely on the borrower's unverified representations regarding his financial situation.  If the

minimum eligibility and NPV conditions are met, the servicer offers the borrower a three-month

Trial Period Plan ("TPP").  During this second stage, the servicer collects documentation from

the borrower to verify his income and confirm his eligibility for a modification.  If the borrower

timely makes three trial payments and is confirmed eligible for a HAMP modification, the

servicer is required to make the modification permanent.[2]

The material facts of this case are not in dispute.  Legore is the owner and resident of a

property located at 1413 Meridene Drive, Baltimore, Maryland.  OneWest, a national bank and a

participant in HAMP, services Legore's home loan.  Legore's monthly income consists of $1,518

in Social Security disability payments and $650 in rental income from two tenants who share his

home.  Additionally, Legore earns $4,000 per year in "non-documentable" cash income for

serving as a baseball umpire during the March to October baseball season.  See Document 23-3.

On November 5, 2009, Legore first applied to OneWest for a HAMP modification.  With

his application, he submitted a modification "request package," including a profit and loss

statement, a lease agreement for the tenants sharing his home, and two months' bank statements.

---

[2]      The two-stage verification process has apparently resulted in some confusion, and the U.S.
Department of the Treasury issued a directive on January 28, 2010 requiring servicers to fully verify a
borrower's income before offering a TPP.  U.S. Dep't of the Treasury, Supplemental Directive 10-01, 1,
available at https://www.hmpadmin.com/portal/programs/docs/hamp_servicer/sd1001.pdf.  At the time of
the events giving rise to this suit, however, the two-stage verification procedure was still in effect.

Shortly before March 25, 2010, Legore submitted a second application, again including the previously provided documents.

On March 25, 2010, OneWest sent Legore a letter offering to place him in a TPP, which would reduce his monthly loan payments from approximately $1,086.81 to $866.13. See Compl. ¶ 32. The letter also outlined the steps he would have to take in order to qualify for a permanent loan modification: namely, three months of trial period payments and submission of specified documentation verifying his income. Legore began to make timely payments at the TPP reduced rate of $866.13. However, problems arose with the document verification process.

On or about April 6, 2010, Legore sent OneWest the requested documentation, including the items he had already submitted with his first and second applications. On August 2, 2010, however, OneWest made another request for documents. The request noted that while eight documents had been accepted, three documents were missing from the application and one document was rejected and needed to be resubmitted.[3] The request stated that Legore had two weeks, until August 16, 2010, to submit the required documents. On or about August 12, 2010, he faxed the requested documentation to OneWest.

---

[3]       The notice states:
>      **Missing**
>      X We did not receive copies of your most recent two (2) months' bank statements. Please submit these documents as soon as possible.
>      X We did not receive either your Profit and Loss Statement . . . or a year-to-date income statement.
>      X The original modification request package you submitted was incomplete. Please submit an updated packet with all requested documents. If you are not sure what documents you need to send please call 1.888.872.0252 to speak with a customer service representative.
>      **Rejected**
>      X The rental agreement is for an expired lease period. Please submit a current rental agreement.

Compl. Ex. 8. At this stage, the Court accepts as true Legore's assertion that he had already submitted two months' bank statements, the modification request package, and his profit and loss statement.

Nevertheless, OneWest had already denied Legore's application for a permanent modification in a letter dated August 11, 2010, five days prior to the appointed deadline. According to the denial, Legore was ineligible because he "did not provide [OneWest] with the documents requested."  Compl. Ex. 7.  OneWest admits that "it was mistaken" to have sent the denial letter prior to the August 16 deadline.  Decl. Charles J. Boyle ¶ 5, Docket No. 23-1.

Thereafter, according to OneWest, it reviewed the additional documentation submitted by Legore.  It concluded that the bank statements were insufficient, because they "did not reflect any deposit of the $650 monthly rental income that Mr. Legore claimed to receive," and that the profit and loss statement was insufficient because it "did not specify the applicable time period for the earnings being reported."  Decl. Charles J. Boyle ¶ 5.

At some time after receiving the August 11 letter, Legore spoke with a customer service representative at OneWest by telephone.  The representative recognized that OneWest had mistakenly denied Legore's application before the stated deadline.  The OneWest representative invited Legore to resubmit the required documentation, which he did on or about September 15, 2010.  The OneWest customer service log entry for September 24, 2010 reflects that certain documents were logged as received, certain documents were logged as missing, and certain documents were logged as rejected.

On December 16, 2010, OneWest issued Legore a Notice of Intent to Foreclose.  At that time, Legore needed to pay $6,304.19 to cure the default.  After having submitted the three reduced TPP payments of $866.13 in April, May, and June 2010, Legore had continued to pay the reduced amount, despite the fact that the three-month TPP had ended.  Thus, the payments at the TPP amount had deepened Legore's default.

On January 18, 2011, Legore filed suit against OneWest in the Circuit Court for

Baltimore City, Maryland.  The case was removed to this Court in March 2011.  On February 7,

2011, a OneWest representative contacted counsel for Legore.  OneWest confirmed that Legore

had been approved in March 2010 for a TPP, and stated:

> While we agree that Mr. Legore was diligent in providing the
> requested documents, the documents that were submitted were not
> acceptable according to HAMP guidelines, and we were therefore
> unable to initiate our review for a permanent modification . . . .  we
> are unable to grant your request to consider Mr. Legore for a
> permanent modification as we have not received acceptable proof
> of his income.  If Mr. Legore wishes to be reconsidered . . . we
> respectfully request the following documentation: [list provided].

Decl. Charles J. Boyle, Ex. 4.  On March 20, 2011, Legore was once again approved to enter a

TPP.  Id. at ¶ 8.  This time, his payments were reduced to $689.47.  Id. at Ex. 5.  After three

successful trial payments at the reduced amount, OneWest offered Legore a permanent HAMP

modification on July 5, 2011, which Legore accepted on July 19, 2011.  See id. at ¶ 9 & Ex. 6.

Under the terms of the modification, OneWest waived unpaid late charges.  Id.

Legore's Complaint, filed before Legore's loan was permanently modified, contains five

counts: breach of contract (Count One), negligence (Count Two), violations of the Maryland

Consumer Protection Act (Count Three), negligent misrepresentation (Count Four), and fraud

(Count Five).  Although the Complaint has not been formally amended, Legore has effectively

conceded that, in light of the loan modification agreement, there are no longer any economic

damages and that, therefore, Legore's breach of contract claim (Count One) is subject to

dismissal.  See Docket No. 20.  OneWest seeks dismissal of all five counts.

The Court has provided notice to the parties that, in light of the discovery and

supplemental briefing that has taken place, the motions to dismiss will be considered by the

Court under a summary judgment standard.  See Docket No. 19.


II.     **LEGAL STANDARD**

Summary judgment is only appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986). The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 520 (1991) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).

To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or other competent evidence to show that a genuine issue of material fact exists.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  A disputed fact presents a genuine issue "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson, 477 U.S. at 248.  Although the Court should assume as true the evidence of the nonmoving party and draw all justifiable inferences in his or her favor, a party cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another."  Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985).


III.    **ANALYSIS**

A.     **Standing to Sue Under the Home Affordable Modification Program**

OneWest first argues that Legore lacks standing to sue because HAMP does not create a private right of action.  Legore concedes that he cannot bring a claim directly under HAMP but

contends that he nonetheless pleads the elements of common law causes of action and that the

HAMP violations are cited as evidence of actionable misconduct.  See Bentley v. Carroll, 734

A.2d 697, 705 (Md. 1999).

> As Chief Judge Chasanow of this Court ably put it:

>> It is true that "Congress did not create a private right of action to
>> enforce the HAMP guidelines."  See Allen v. CitiMortgage, Inc.,
>> No. CCB–10–2740, 2011 WL 3425665, at *8 (D. Md. Aug. 4,
>> 2011).  Courts in this district have held, however, that separate and
>> apart from HAMP, enforcement of the TPP, if one exists, may give
>> rise to a private right of action.  See Stovall v. Sun Trust Mortg.,
>> Inc., No. RDB–10–2836, 2011 WL 4402680, at *11 (D. Md. Sept.
>> 20, 2011); Allen, 2011 WL 3425665, at *4.

Ramos v. Bank of Am., CIV.A. DKC 11-3022, 2012 WL 1999867, at *3 (D. Md. June 4, 2012).

OneWest contends that because HAMP does not create a private right of action, all

common law claims based on violations of the HAMP guidelines should be summarily

dismissed.  The Court agrees that HAMP does not create a private right of action, however, this

does not mean that defendants are "'wholly immunized for their conduct so long as the subject of

the transaction is associated with HAMP.'"  Allen, 2011 WL 3425665, at *4 (quoting Vida v.

OneWest Bank, No. 10-987, 2010 WL 5148473, at *5 (D. Or. Dec. 13, 2010)); see also Wigod v.

Wells Fargo Bank, 673 F.3d 547, 560 (7th Cir. 2012).  The Court will consider whether

OneWest is entitled to judgment as a matter of law on each of Legore's claims.

### B.    Count One: Breach of Contract

Legore has stated that he "anticipates dismissing the claim for breach of contract (Count

I) upon further conference with opposing counsel," as Legore no longer has a claim for economic

damages now that his loan agreement has been permanently modified.  See Docket No. 20.

Legore stated that dismissal of this claim was contingent on whether defendant "reports the loan as current to credit agencies, and takes other steps to clean-up plaintiff's credit scores." Id.

Legore has neither voluntarily dismissed this claim, nor provided any evidence that his credit scores were detrimentally affected in a way that has resulted in economic damages. With no evidence of economic damages and with this claim effectively conceded, the Court concludes that granting summary judgment on Legore's breach of contract claim is appropriate.

### C.    Counts Two and Four: Negligence and Negligent Misrepresentation

Legore alleges that OneWest was negligent by (i) misplacing documents, (ii) overlooking documents it did not misplace, (iii) not offering "reasonably sufficient clarification of the format of the bank statements and profit and loss statements it requested from plaintiff," (iv) "losing track of the documents it wished to request," and (v) being "careless in its eligibility determination." Document No. 20. OneWest argues that it does not owe Legore a tort duty of care, or if it does, the duty is not of the magnitude sought by Plaintiff.[4] Furthermore, according to OneWest, even if a tort duty existed, OneWest handled Plaintiff's application in a proper manner that ultimately resulted in a permanent modification to Legore's loan.

---

[4]    Because both negligence and negligent misrepresentation require the plaintiff to establish a duty of care, the Court addresses them together.

"A complaint alleging negligence must contain the following elements: (1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty." Lloyd v. Gen. Motors Corp., 916 A.2d 257, 270–71 (Md. 2007) (quotation marks omitted) (quoting Valentine v. On Target, 727 A.2d 947, 949 (Md. 1999)).

The elements of the tort of negligent misrepresentation in Maryland are "(1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement; (2) the defendant intends that his statement will be acted upon by the plaintiff; (3) the defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury; (4) the plaintiff, justifiably, takes action in reliance on the statement; and (5) the plaintiff suffers damage proximately caused by the defendant's negligence. Martens Chevrolet, Inc. v. Seney, 439 A.2d 534, 539 (Md. 1982).

The existence of a legal duty is a question of law to be decided by the Court.  Doe v. Pharmacia & Upjohn Co., Inc., 879 A.2d 1088, 1092 (Md. 2005).  As noted above, because Congress did not intend HAMP to create a private right of action, Legore cannot rely on an alleged violation of the HAMP guidelines as the sole basis for an action in negligence.

In Maryland, the relationship between a bank and a borrower is contractual, not fiduciary, in nature.  Yousef v. Trustbank Sav., 568 A.2d 1134, 1138 (Md. Ct. Spec. App. 1990).  "The mere negligent breach of a contract, absent a duty or obligation imposed by law independent of that arising out of the contract itself, is not enough to sustain an action sounding in tort."  Jacques v. First Nat'l Bank of Md., 515 A.2d 756, 759 (Md. 1986).  In cases involving economic loss,[5] the imposition of tort liability requires "an intimate nexus between the parties" that is satisfied by "contractual privity or its equivalent."  Id. at 759-60.  Absent "special circumstances," the court is reluctant to "transform an ordinary contractual relationship between a bank and its customer into a fiduciary relationship or to impose any duties on the bank not found in the loan agreement."  Parker v. Columbia Bank, 604 A.2d 521, 532 (Md. Ct. Spec. App. 1992) (citations omitted).

This Court agrees with every other court to consider the issue that the HAMP loan modification process does not create the "special circumstances" required to form a tort duty under Maryland law.  See Spaulding v. Wells Fargo Bank, CIV.A. GLR-11-2733, 2012 WL 3025116, at *6 (D. Md. July 23, 2012) ("Applying the principles and holding of Jacques, the Court finds the exception articulated to be inapplicable . . . . No tort duty, therefore, could arise as a matter of law."); Matthews v. Wells Fargo Bank, CIV.A. MJG-12-1024, 2012 WL 3903453,

---

[5]       "Because the harm likely to result from negligent processing of a loan application is limited to economic loss, we examine carefully the relationship that existed between these parties." Jacques, 515 A.2d at 760.

at *1 (D. Md. Sept. 6, 2012) (adopting the <u>Spaulding</u> rationale); <u>Ramos</u>, 2012 WL 1999867, at

*5 (accepting allegation that parties had entered into a TPP agreement, finding no special

circumstances above what was allegedly agreed upon in the TPP, and concluding that no tort

duty of care existed); <u>Allen</u>, 2011 WL 3425665, at *8 (dismissing breach of fiduciary duty claim

because "plaintiffs have failed to plead any special circumstances that would be sufficient to

transform their ordinary contractual relationship with CitiMortgage into a fiduciary

relationship"); <u>Akinkoye v. Wells Fargo Home Mortg.</u>, CIV.A. DKC 11-2336, 2011 WL

6180210, *7 (D. Md. Dec. 12, 2011) (dismissing constructive fraud claim because "the

complaint does not allege any facts describing special circumstances that would lead to a

conclusion that Defendants owed Akinkoye a duty above and beyond what was allegedly agreed

upon in the TPP").

The Court concludes that OneWest is entitled to judgment as a matter of law on Legore's

negligence and negligent misrepresentation claims.


**D.     Counts Three and Five: Maryland Consumer Protection Act and Common Law Fraud**

Legore next advances fraud-based claims for unfair or deceptive trade practices in

violation of the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law §

13-301 <u>et seq.</u>, and common law fraud.

The MCPA prohibits the commission of unfair or deceptive trade practices, which

include making a "false . . . or misleading oral or written statement . . . or other representation of

any kind which has the capacity, tendency, or effect of deceiving or misleading consumers." <u>Id.</u>

§ 13–301(1).  In order to state a claim for common law fraud in Maryland, a plaintiff must allege

"(1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either

known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation." <u>Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.</u>, 665 A.2d 1038, 1047 (Md. 1995).

Legore claims that OneWest deceptively misled him, as a consumer, by making several misrepresentations. <u>See</u> Compl. ¶ 59. First, according to Legore, OneWest misrepresented that it would provide Legore a permanent modification if he submitted required documentation and made three monthly trial payments. Second, OneWest made misrepresentations to Legore that it had not received certain documentation, when in fact Legore had submitted the documentation. Third, OneWest misrepresented the deadline to submit documents. Fourth, OneWest misrepresented that it had a right to foreclose on Legore's home. Finally, OneWest misrepresented that it intended to comply with HAMP procedures and obligations.

With regard to the particulars of Legore's claim, in light of the undisputed facts and making all justifiable inferences in favor of Legore, the Court concludes that, as in <u>Spaulding</u>, OneWest's alleged misrepresentations were simply not false or fraudulent. <u>Spaulding</u>, 2012 WL 3025116, at *6-7. First, OneWest did not promise to provide a permanent modification, and Legore was not automatically entitled to one. Second, although Legore contends that his documents were lost and he was required to resubmit them, he does not contest that he had failed to submit <u>acceptable</u> income verification documentation; accordingly it was not deceptive or misleading for OneWest to require Legore to resubmit documents and to initially deny Legore's HAMP application.[6] Third, while OneWest admittedly and mistakenly issued a denial letter five

---

[6] For example, on Legore's HAMP application, he claimed $650 per month in "rental income." <u>See</u> Docket No. 23-3. According to the HAMP guidelines, rental income must be verified by

days before the deadline for Legore to submit documentation, it acknowledged its error as soon as Legore contacted it and provided him with an opportunity to resubmit his documents.  Fourth, OneWest's notice of intent to foreclose was not in violation of the MCPA because OneWest had a right, under the deed of trust, to seek foreclosure when Legore could not make his payments. Lastly, Legore's claim that OneWest falsely "represented to the world it would comply with its HAMP obligations" is simply another effort to enforce the HAMP guidelines.  To allow Legore to recover on this basis would effectively create a private right of action, which Congress has declined to do.

Legore's MCPA claim also fails because, having conceded that there are no economic damages, he cannot establish that he suffered an identifiable economic loss as required by the MCPA.  See Farwell v. Story, CIV.A. DKC 10-1274, 2010 WL 4963008, at *8-9 (D. Md. Dec. 1, 2010) (dismissing MCPA claims arising out of alleged HAMP violation where plaintiff did not allege that she relied on defendant's actions to her economic detriment).  The Maryland Court of Appeals has "established that, in order to articulate a cognizable injury under the Consumer Protection Act, the injury must be objectively identifiable.  In other words, the consumer must have suffered an identifiable loss, measured by the amount the consumer spent or lost as a result of his or her reliance on the sellers' misrepresentation." Lloyd v. Gen. Motors Corp., 916 A.2d 257, 277 (2007).  Legore has conceded that he has suffered no economic harm

---

"provid[ing] evidence of that income, which is generally documented on "IRS Schedule E (Supplemental Income and Loss) of the borrower's tax return for the most recent tax year," or, "if Schedule E is not available to document rental income because the property was not previously rented, servicers may accept a current lease agreement and bank statements or cancelled rent checks."  See Making Home Affordable Program Handbook for Servicers of Non-GSE Mortgages at 71, Docket No. 23-4.  Although Legore's application states that he had been receiving rental income from one tenant since 1994 and the other since 2009, Legore did not submit an IRS Schedule E with his HAMP application, but instead submitted bank statements that did not identify the source of any deposits other than social security payments and a lease signed on August 12, 2010 for a two-year term beginning January 1, 2010.  See Docket No. 23-3.

as a result of his HAMP application process, which ultimately resulted in a permanent loan modification.

Legore's common law fraud claim also fails for the additional reason that the undisputed evidence simply does not show that Legore reasonably relied on any of the alleged misrepresentations.  See Coulibaly v. J.P. Morgan Chase Bank, CIV.A. DKC 10-3517, 2011 WL 3476994, at *19 (D. Md. Aug. 8, 2011) (dismissing fraud claims arising out of HAMP process for lack of reliance, where "the complaint indicates that Plaintiff protested many of [Defendant]'s actions at every opportunity").  Legore's strongest reliance contention is that he relied on the designated August 16th due date by waiting until August 13th to submit the required documentation.  However, he does not dispute that after being prematurely denied a permanent HAMP modification on August 11, he alerted OneWest of its mistake and it provided him with additional time to submit his documents.[7]

In light of the undisputed facts, and drawing all justifiable inferences in favor of Legore, a reasonable jury could not return a verdict in his favor on his fraud-based claims.  OneWest is therefore entitled to judgment as a matter of law on Legore's MCPA and fraud claims.[8]

---

[7]     See Compl. ¶ 38.2(e) ("Mr. Legore once again submitted all four items to OneWest (with updates) by fax . . . in response to an August 27, 2010 customer service supervisor conversation by telephone suggesting that Mr. Legore could still be eligible for a HAMP modification (despite the August 11, 2010 HAMP denial letter)").

[8]     As in Akinkoye, 2011 WL 6180210, at *7 & n.8, the Court does not reach OneWest's argument as to preemption.

**IV.     Conclusion**

For the foregoing reasons, the Court will, by separate Order of even date, GRANT

OneWest's Motion to Dismiss, Docket No. 14, and OneWest's Supplemental Motion to Dismiss,

Docket No. 23, with prejudice.


Dated this <u>15th</u> day of October, 2012.


_____/s/_____
Benson Everett Legg
United States District Judge